1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CLEVELAND,<br><br>                                    Plaintiff,<br><br>v.<br><br>THE BEHEMOTH,<br><br>                                    Defendant. | Case No.:  19-cv-0672-GPC-BGS<br><br>**ORDER DENYING PLAINTIFFS MOTION FOR SANCTIONS**<br><br>[ECF 37] |

Plaintiff Robert Cleveland has filed a Motion for Evidence Preclusion and Monetary Sanctions for an allegedly untimely production of discovery. (Doc. 37). Defendant The Behemoth has filed an Opposition.  (Doc. 40).  For the reasons set forth below, the Motion is **DENIED**.

**I.     Timeliness of Defendant's Supplemental Production**

**A.     Legal Standard**

Federal Rule of Civil Procedure 26(e) governs supplementing discovery disclosures and responses. Subsection (1) of that Rule states:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—*must* supplement or correct its disclosure or response:
>
>          (A) in a timely manner *if* the party learns that in some material respect the disclosure or response is incomplete or incorrect, *and if* the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

1

1     (B) as ordered by the court.

2     Fed. R. Civ. P. 26(e)(1) (emphasis added).

3     "[T]he duty to supplement arises when counsel becomes aware that a previous

4     response has become incomplete or inaccurate, not that it was so at the time the response

5     was signed." *Smiley v. Hologic, Inc.*, No. 16-CV-0158-WQH-MDD, 2017 WL 4244861,

6     at *2 (S.D. Cal. Sept. 25, 2017) (citing *Harper v. City of Dallas,* No. 3:14-cv-2647-M,

7     2017 WL 3674830 *16, (N.D. Tex. Aug. 25, 2017)). "Under Rule 26(e), parties have an

8     ongoing obligation to continuously supplement their discovery responses. That obligation

9     is in no way limited by the discovery deadlines imposed by the Court's Scheduling Order

10    pursuant to Rule 16." *Harper*, 2017 WL 3674830, at *16 (quoting *United States v. State

11    of La.*, No. CV 11-470-JWD-RLB, 2015 WL 5595630, at *1 (M.D. La. Sept. 21, 2015));

12    *see also* Fed. R. Civ. P. 26(e) advisory committee's note to 1993 amendment.

13    "Supplemental responses or disclosures are a one-way street: the burden is placed

14    upon the producing party to supplement responses or disclosures in a timely manner upon

15    finding that their initial responses or disclosures are materially incomplete or inaccurate."

16    *Smiley*, 2017 WL 4244861, at *1 (quoting court's prior decision) (citing Rule

17    26(e)(1)(A)). "The producing party carries the burden of convincing the Court that the

18    supplemental disclosures or responses are timely and, if not, the untimeliness is

19    substantially justified or harmless." *Id.*

20    "[T]imeliness under Rule 26(e)(1)(A) is measured from 'the date when the facts

21    are discovered, not some nebulous date when counsel first realized that there was some

22    significance to them.'" *Longlois v. Stratasys, Inc.*, 88 F. Supp. 3d 1058, 1077 (D. Minn.

23    2015) (quoting *Havenfield Corp. v. H & R Block, Inc.*, 509 F.2d 1263, 1272 (8th Cir.

24    1975)). Timeliness is not measured by a particular date or event; rather, timeliness means

25    without undue delay upon discovering the information that is to be provided. *See id.*

26    "A supplemental disclosure under Rule 26(e)(1)(A) is timely if it is made as soon

27    as possible." *Hypertherm, Inc. v. American Torch Tip Co.*, Civil No. 05–cv–373–JD,

28    2009 WL 703271, at *1 (D. N.H. Mar. 16, 2009); *see also, e.g., Malozienc v. Pac. Rail*

*Servs.*, 572 F. Supp.2d 939, 943 (N.D. Ill. 2008) (holding supplementation was made in a timely manner "by supplementing discovery production as soon as possible"); *Walls v. Paulson*, 250 F.R.D. 48, 53 (D.C. C. 2008) (finding supplemental responses untimely when made months after learning of information); *Hummer v. BNSF Ry. Co.*, No. 06-CV-1218, 2006 WL 3523752, at *2 (C.D. Ill. Dec. 6, 2006) (finding supplemental disclosure made nine days after party became aware of evidence was timely). *Smiley,* 2017 WL 4244861, at *2 (Plaintiff did nothing to explain why counsel waited nine months after the close of discovery to provide supplements); *Bruhn Farms Joint Venture v. Fireman's Fund Ins. Co.*, No. 13-CV-4106-CJW, 2017 WL 632105, at *4 (N.D. Iowa Feb. 13, 2017)

## B.   Analysis

In order for the requirements of Rule 26(e) to apply, the supplemental discovery must be in response to one or more of the RFPs identified by the Plaintiff or a required supplement to an initial disclosure under Rule 26(a). Rule 26(e)(1)(A). Therefore, the Court first determines whether the documents in the Supplemental Production are responsive to the RFPs Plaintiff relies on and then considers whether they qualify as supplements to initial disclosures.

### 1.   Responsive to RFPs

The duty to supplement arises when counsel becomes aware that a previous response has become incomplete or inaccurate, not that it was so at the time the response was signed. *See Harper*, 2017 WL 3674830 *16. The Plaintiff contends that of the 582 pages of the discovery turned over on December 23, 2020 "[c]ertain (if not all) of the documents are responsive to the RFPs propounded by Plaintiff in August of 2019." (Doc. 37-1 at 5).[1] In support of this contention, Plaintiff identifies the RFPs he claims the 582 pages are responsive to. They are:

---

[1] The Court cites the CM/ECF electronic pagination throughout except when referencing declarations or as otherwise noted.

• Request for Production No. 23: Produce all Documents Concerning the Employee file of Plaintiff, including his hiring, discipline, termination, and job performance.

• Request for Production No. 24: Produce all Documents Concerning Employee or contractor complaints made against or about Stamper to The Behemoth.

• Request for Production No. 27: Produce all Documents Concerning sexual harassment and/or discrimination complained of by Plaintiff during his employment/contract with The Behemoth, as set forth in Plaintiff's operative Complaint, including all Documents Concerning any actions taken by or at the bequest of The Behemoth in response thereto.

• Request for Production No. 30: Produce all Documents Concerning posts, "likes," comments, Tweets, or other social media actions/content taken or created by Stamper, including all discussion threads, fan complaints, fan commentary, internal Communications through any messaging systems utilized or formerly utilized by The Behemoth and/or websites, blogs, or social media accounts controlled or accessible to The Behemoth.

(Doc. 37-1 at 7).

Although Plaintiff identifies these RFPs and asserts the supplemental discovery responses are responsive to them, Plaintiff does not specify which of the 582 pages is responsive to which RFP. Instead, in summary fashion he lists categories of responsive documents as,

1) Slack chats responsive to Plaintiff's RFPs (despite Ms. Chung's repeat representations in 2019 that all Slack data had been searched for and produced); 2) photographs; 3) records purportedly relating to Plaintiff's performance reviews and directly responsive to Plaintiff's RFPs; 4) emails between Ms. Chung's clients, Mr. Fernandes and Mr. Baez (despite earlier productions of emails between them and The Behemoth's unfettered access to their emails); and 5) a purported YouTube watch list.

(Doc. 37-1 at 10).

The Defendant states that it produced 18 documents on December 23, 2020 as the supplemental discovery ("Supplemental Production"). (Doc. 40-1 at 2). The YouTube Watch History comprised 414 pages of the 582 pages, approximately 70% of the Supplemental Production. (Doc. 40 at 10). The Defendant claims that most of the

documents are not responsive to Plaintiff's discovery requests. (Doc. 40 at 4). It provides a table addressing which of the supplemental documents are responsive to Plaintiff's RFPs and whether the document(s) had been previously produced. (*Id.* at 5). In that table, the Defendant identifies only 10 slack conversations (TRC_007797-7836) between Plaintiff and former co-workers as being responsive to the parties' agreed upon search terms. (*Id.*) As regards Plaintiff's RFP No. 23, the Defendant objected to performance reviews and agreed to only produce Plaintiff's personnel file. (Doc. 40 at 7).

"A party . . . who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its . . . response . . . in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect." Rule 26(a)(1). Therefore, the Court must first ascertain which of the documents respond to Plaintiff's listed RFPs in order to determine whether the alleged belated discovery relates to an incomplete response to that RFP.[2] The Court has attempted to follow the categories of the supplemental discovery listed by the Parties.

### a)   Slack Messages

Regarding the slack messages, Defendant concedes they were responsive to Plaintiff's RFP(s).

### b)   Emails

Defendant claims five additional emails are not responsive to Plaintiff's RFPs. Email from Jay Fernandes (TRC_008266) ("Core Tester email") was not responsive and was produced previously by Plaintiff. (Doc. 40 at 5). Email from Jay Fernandes regarding use of company property (TRC_008299) ("Company Property email") also is not responsive and otherwise previously produced by Plaintiff. Two emails from Jay

---

[2] The Court only addresses whether or not any part of the Supplemental Production is responsive to these RFPs. Since the Plaintiff did not identify any other relevant RFPs as part of his dispute, the Court is limited to the RFPs Plaintiff proposed as being responsive.

Fernandes to John Baez regarding various workers' attendance and bonuses (TRC_008295-8298) are not responsive to RFP 23 and were not previously turned over. (*Id.* at 6). Bobby temp agency email (TRC_008327-8330) is not responsive and already previously produced by Plaintiff. (*Id.*)

Plaintiff's Motion indicates that the Defendant had, during the course of discovery, produced emails to/from Jay Fernandes, Plaintiff's former supervisor, and John Baez, a The Behemoth owner. (Doc. 37-1 at 8, 10). However, Plaintiff does not identify which RFPs these emails were responsive to.

The numerous RFPs listed by Plaintiff do not specifically request emails between Jay Fernandez and John Baez. (*Id.* at 7). They seek documents concerning complaints against Stamper; concerning sexual harassment or discrimination complained of by Plaintiff; and documents concerning social media created by Stamper. (*Id.*) The Defendant's summary of the five emails do not involve the topics listed in these RFPs. (*See* Doc. 40 at 16). The Plaintiff does not explain how these emails would be responsive to the topics covered in the RFPs Plaintiff has identified.

Out of an abundance of caution the Court reviewed those emails produced by the Defendant in its supplemental discovery. (*See* Defendant's Exhibits I and J). Exhibit I regards the two emails between Fernandes and Baez. These emails are consistent with Defendant's description (Doc. 40-1 at 8). They are not responsive to Plaintiff's identified RFPs and the topics covered therein.

Exhibit J concerns the Jay Fernandes email of April 27, 2017 which regarded use of company property. It does not relate to the RFPs identified by the Plaintiff. Additionally, according to Defendant, this email as well as the other two, were already produced in discovery. Defendant cites to the excel sheet which contained these three emails that were already produced. In any event, according to Defendant's undisputed description of the remaining two emails, the Court finds they would not be responsive to Plaintiff's specified RFPs.

### c)      Photographs

Defendant's table identifies the following and indicates they are not responsive to Plaintiff's RFPs: photos of December 13, 2016 holiday party ("Holiday Photographs"); photos of Plaintiff and co-workers at work ("Misc. Photographs"); photos of a magazine ("Magazine Photographs"); photos of TRC ("TRC Photograph"); and photo of door ("Photograph of Door"). (Doc. 40 at 5-6). Plaintiff, apart from indicating that photos were part of the supplemental documents, makes no mention of how they are responsive to the listed RFPs. Plaintiff simply contends that he has no ability to determine the source and origin of the photos. (Doc. 37-1 at 17).  The Defendant's description of the photos does not concern any of these RFPs. Again, the Court has reviewed the produced photos, provided by the Defendant in its Exhibits C, E, F, G, and H, and they appear as described by the Defendant and to the Court they do not concern RFPs 24, 27, 30. The Court finds that the photos are not responsive to the RFPs identified by the Plaintiff.

### d)      Records Relating to Plaintiff's Performance Reviews

Plaintiff claims that records pertaining to performance reviews are directly responsive to his RFPs. (Doc. 37-1 at 10). However, he does not identify which records from the Supplemental Production he is referring to. The Court notes that RFP No. 23 covers production of all Documents concerning the Employee file of Plaintiff, including his hiring, discipline, termination, and job performance.  However, the Defendant disputes this.  (Doc. 40 at 6).  "Plaintiff contends that 'performance reviews and [sic] directly responsive to Plaintiff's RFPs,' but Defendant objected to RFP No. 23 and agreed to produce only Plaintiff's personnel file, which it did produce, and Plaintiff never conferred over this response or moved to compel." (Doc. 40 at 8 (citing Decl. of Lisa Chung ("Chung Decl.") ¶ 3 and quoting Plaintiff's brief, Doc. 37-1 at 10)).

The Plaintiff has not addressed this contention by Defendant, but regardless the Court notes that the parties did not raise any discovery dispute concerning RFP 23. As such, the Court finds that the only responsive documents would have to pertain to Plaintiff's personnel file. Since Plaintiff fails to identify which documents in the

Supplemental Production relate to Plaintiff's personnel file, the Court turns to

Defendant's table which summarizes the documents. These documents are identified:

- Documents with handwriting of Jay Fernandes (TRC_008267–8291);
- Two emails from Jay Fernandes to John Baez re: various workers' attendance, bonuses (TRC_008295–8298);
- One on One Excel Spreadsheet Notes 9/26/17(TRC_008331) ("One on One Notes");
- 2016 Glorious Workers Information Distillation ("GWID 2016") (TRC_008367–8379);
- 2017 Glorious Workers Information Distillation ("GWID 2017") (TRC_008302–8326).

(Doc. 40 at 5-7).

As to all of these documents, the Defendant contends "Not responsive

as not a part of, concerning, or found in "Employee file" (*See* Pl.'s

RFP No. 23)." (*Id.*) And, Plaintiff's Motion offers no explanation as to how these

documents relate to Plaintiff's personnel file.

The document of handwritten comments of Jay Fernandes was not provided in the

exhibits for the Court to review. Plaintiff did not provide a description of this document

or identify which RFP this document was responsive to.  Defendant claims this half-page

document relates solely to the impressions of Mr. Fernandes and Mr. Baez regarding

Plaintiff (Doc. 40 at 17) and this document was not included in Plaintiff's personnel file.

(Doc. 40 at 11, 17; Chung Decl. ¶ 13; Decl. of John Baez ("Baez Decl.") ¶¶ 33, 34). The

Court therefore finds this document is not part of the personnel file and is therefore not

responsive to RFP 23.

The two emails from Jay Fernandes to John Baez were addressed in the previous

section. The Court reviewed these two emails and finds they do not concern RFP 23 and

Plaintiff's personnel file.

As to the One on One Notes, it was not provided for Court review. The Defendant claims it was not found in the Plaintiff's personnel file, and Plaintiff does not address it. The Court, relying on Defendant's representation and the Plaintiff's lack of explanation, finds it was not part of the Plaintiff's personnel file.

The Court has also reviewed the 2016 and 2017 Glorious Workers Information Distillation documents. (*See* Defendant's Exhibits K and L). Both documents are a general survey of the entire company which Plaintiff filled out. The Plaintiff does not address them. The Defendant claims they were not part of Plaintiff's personnel file. After reviewing these documents, the Court finds they were not part of Plaintiff's personnel file.

### e)    YouTube Watch History

Other than contending that the YouTube Watch History was responsive to his RFPs, the Plaintiff does not identify which RFP(s) relate to this supplemental discovery nor does he explain how Defendant's response was incomplete. Defendant alleges it is not responsive to the RFPs identified by Plaintiff but offers no explanation as to why. The Court notes that none of these RFPs asks for Plaintiff's YouTube watch history or list. Without more guidance from the Plaintiff as to which RFP this discovery is responsive to, the Court finds that the YouTube Watch History was not responsive to any of these RFPs.

### f)    Other Documents

Three additional documents are identified by Defendant as not being responsive to Plaintiff's RFPs, not identified by Defendant as a trial exhibit and not previously produced in this matter: (1) Calendar entries (TRC_008332-8334); (2) Plaintiff's work task spreadsheet (TRC_008342-8379); and (3) TRC's Path to Design . . . ness Document (TRC 008338-8341).  (Doc. 40 at 6-7).  Other than Defendant's explanation how the task spreadsheet and Path to Design document are harmless because neither party is relying on them at trial, neither party addresses these documents and they have not been provided to the Court.  Given the minimal information provided, the Court finds these documents

19-cv-0672-GPC-BGS

would not be responsive to Plaintiff's RFPs.  However, even if they were, the Court would agree that their production is harmless given neither party is planning to rely on them for trial.

In summary, the Court finds the 10 slack messages were responsive to Plaintiff's RFPs. The emails (TRC-008266, TRC_008299, TRC_008295-8298, TRC_008327-8330), photographs, records relating to performance reviews (as detailed above), YouTube Watch History, and other documents are not responsive to Plaintiff's RFPs.

### 2.    Responsive to Initial Disclosures

Plaintiff also contends that Defendant flouted its duty to make complete initial disclosures or [timely] supplement those disclosures. *See* Fed. R. Civ. P. 26(e)(1)(A). He submitted Defendant's initial disclosures. (Exhibit A) but Plaintiff does not identify which documents in the Supplemental Production constitute a supplement to Defendant's initial disclosures. Defendant's summary table only addresses whether a document is responsive to an RFP. It does not address whether the supplemental discovery constituted initial disclosure. But Defendant's table/chart does identify those documents from the Supplemental Production that Defendant has identified as trial exhibits. (*See* Doc. 40 at 5-7).

Notwithstanding Plaintiff's failure to identify which of documents produced would be considered a supplement to the initial disclosures, the Court on its own considers whether those trial exhibits constitute supplements to Defendant's initial disclosures, thereby requiring the Defendant to have timely disclosed them to Plaintiff. The Court limits this inquiry to those trial exhibits that were not previously produced to the Plaintiff.

Defendant has conceded that the 10 slack messages are responsive to Plaintiff's RFPs, so the Court will not address whether they also qualify as initial disclosure.

Plaintiff's YouTube Watch History, all photographs identified as trial exhibits not previously produced (Holiday Photographs, Misc. Photographs, Magazine Photographs, Photograph of TRC, and Door Photograph), the two emails from Fernandes to John Baez, and One on One Notes all appear to qualify as supplements to initial disclosures under

Rule 26(a)(1)(ii) in that they were documents in Defendant's possession that the Defendant may use to support its claims or defenses, unless the use would be solely for impeachment. The Defendant has not specified if its intended use is solely for impeachment. As such the Court finds they were supplements to initial disclosures.

The handwritten notes found in a manila folder pertaining to the Plaintiff appear to be those of Plaintiff's supervisor Jay Fernandes. (Doc. 40-1 at 7). The Defendant has not marked them as a trial exhibit. The Plaintiff does not proffer how this document would be considered an initial disclosure. Neither party has provided the document for Court review. Therefore, the Court finds without prejudice that it is not a responsive document under Rule 26(a)(1)(A)(ii).

In summary, the Court finds the YouTube Watch History, photographs identified as trial exhibits and not previously produced, the two emails from Fernandez to John Baez, and the One on One Notes all appear to qualify as supplements to initial disclosures.

### 3.   Timeliness of Defendant's Disclosure of Responsive Supplemental Discovery

#### a)   Time Frame

In his Motion, Plaintiff stressed that the Supplemental Production was belated for more than a year after discovery closed.  Discovery closed December 21, 2019 and the supplemental discovery was provided December 23, 2020. Indeed, approximately a year passed. However, the Plaintiff fails to point out that both counsel filed a Joint Motion to temporarily stay the case from May 13, 2020 to November 1, 2020 due to both being on overlapping leaves of absence. (Doc. 15 at 1, 3). Both attorneys proffered that they each led the litigation in the case and that no other attorneys at their respective firms were available to take over the case while they were on leave. (*Id.* at 2). The Court granted their Joint Motion. (Doc. 17). Given their Joint Motion, the Court finds that the time frame during which Defendant had a duty to timely supplement the RFP responses and initial disclosures extended from December 21, 2019 to May 13, 2020 and from

November 1, 2020 to December 23, 2020.  This in effect cuts the alleged late discovery to about 6 months, not over a year. The issue then is whether, during that 6 months or even before the termination of fact discovery, the Defendant timely produced the responsive supplemental documents.

### b)   When Did Defendant's Duty to Supplement Arise

Supplemental responses or disclosures are a one-way street: the burden is placed upon the producing party to supplement responses or disclosures in a timely manner upon finding that their initial responses or disclosures are materially incomplete or inaccurate. *See* Rule 26(e)(1)(A). The producing party carries the burden of convincing the Court that the supplemental disclosures or responses are timely and, if not, as discussed further below, that the untimeliness is substantially justified or harmless. *Smiley*, 2017 WL 4244861, at *1.

The first inquiry is whether or not the supplemental discovery was in the possession of the Defendant at the time of its responses to the RFPs and the production of their initial disclosures.  After reviewing the Baez Declaration (Doc. 40-1 at 1-10) along with Defendant's Opposition (Doc. 40), all the responsive supplemental discovery was in Defendant's possession at that time except for the Magazine Photographs.[3]

Further, the Court finds that the Defendant had a duty to disclose it prior to December 23, 2020, which was just prior to the deadline to submit Pretrial Disclosures which were due on December 28, 2020. (*See* Doc. 37-1 at 9).  Disclosure six months after the close of discovery, excluding time stayed, was not timely. *See* 8A Charles Alan Wright & Aruther R. Miller, *Fed. Prac. & Proc.* § 2049.1 (3d ed), 1993 Expansion of Duty to Supplement or Correct ("[T]here is no excuse under the restyled [Rule 26(e)

---

[3] As addressed further below, Defendant explains that it did not have the Magazine Photograph until December 23, 2020 when it received them from a third party.  (Doc. 40 at 17 (citing Chung Decl. ¶ 8).  Defendant indicates that they were produced to Plaintiff the same day they were received.  (*Id.*)

2007 amendments] for failure to supplement where the information was in the responding party's possession at the time the incomplete response was made."); *see also Steady State Imaging, LLC v. Gen. Elec. Co.*, Case No. 17-cv-01048-JRT-KMM, 2018 WL 2047578, at *9-10 (D. Minn. May 2, 2018)(quoting the same and finding supplementations were not timely for purposes of Rule 26(e)(1).).

The Ninth Circuit in *Bauer Bros. LLC v. Nike, Inc.*, found "no error in the district court's exclusion of Bauer Bros.' untimely-disclosed silkscreen evidence on the ground that the evidence fell within the ambit of Bauer Bros.' disclosure obligations pursuant to Federal Rule of Civil Procedure 26." 598 Fed. Appx 506 (9th Cir. March 17, 2015). The court found the district court did not abuse its discretion in finding that the untimely disclosure was not "substantially justified" or "harmless" and affirmed the district court's exclusion. *Id.* (citing Fed. R. Civ. P. 37(c)(1)).

The Defendant claims it only became aware of this supplemental discovery around or about December 20, 2020 and promptly turned it over to the Plaintiff.  (Doc. 40 at 10, 15-16.)  The Defendant proffers several good faith reasons for these otherwise late productions; however, these reasons are best addressed in considering whether "the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

In summary, the Court finds the slack messages responsive to Plaintiff's RFPs were not timely produced and the YouTube Watch History, photographs identified at trial exhibits not previously produced, the two emails from Fernandez to John Baez, and the One on One Notes were not timely identified as supplements to initial disclosures.

## II.   Sanctions

Having found some of the Supplemental Production untimely, the Court now considers whether the failure was substantially justified or harmless.

### A.   Legal Standards

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or

harmless." Rule 37(c)(1);[4] *see also Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). "The Advisory Committee Notes describe it as a 'self-executing,' automatic' sanction to 'provide[] a strong inducement for disclosure of material." *Yeti by Molly*, 259 F.3d at 1106 (citing Fed. R. Civ. P. 37 advisory committee's note (1993)). A finding of bad faith is not required for Rule 37 sanctions, however, "good or bad faith may be a consideration in determining whether imposition of sanctions would be unjust." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (1994). Rule 37(c)(1) itself also provides alternatives to exclusion of evidence. "In addition to or instead of this sanction," the Court "may order payment of the reasonable expenses, including attorneys' fees, caused by the failure" or "may impose other appropriate sanctions." Rule 37(c)(1).[5]

---

[4] Rule 37(c)(1) in full provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless*. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

[5] Plaintiff's Motion also includes citation of authority regarding Federal Rule of Civil Procedure 26(g). (Doc. 37-1 at 13-14). However, Plaintiff's motion does not identify what disclosure or discovery response it is that Plaintiff is claiming Defendant has certified in violation of Rule 26(g) to warrant sanctions. The Rule requires counsel's certification on disclosures and discovery requests, responses, and objections. Fed. R. Civ. P. 26(g)(1). Counsel's signature "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: (A) with respect to disclosure, it is complete and correct as of the time it is made" and as to discovery requests, responses, or objections, "it is consistent with these rules," not interposed for any improper purpose," and neither unreasonable not unduly burdensome or expensive."

14

"Two express exceptions ameliorate the harshness of Rule 37(c)(1): The information may be introduced if the parties' failure to disclose the required information is substantially justified or harmless." *Yeti by Molly*, 259 F.3d at 1106; *see also* Rule 37, advisory committee's note to 1993 amendment ("Limiting the automatic sanction to violations 'without substantial justification,' coupled with the exception for violations that are 'harmless,' is needed to avoid unduly harsh penalties in a variety of situations.")

The party trying to avoid Rule 37 sanctions, here Defendant, bears the burden of proving substantial justification or harmlessness. *Goodman v. Staples The Office Superstore*, LLC, 644 F.3d 817, 827 (9th Cir. 2011) (citing *Yeti by Molly Ltd.*, 259 F.3d at 1107) ("The burden to prove harmlessness is on the party seeking to avoid Rule 37's exclusionary sanction."); *see Liew v. Breen*, 640 F.2d 1046, 1050 (9th Cir. 1981) ("[P]arty against whom an award of expenses is sought has the burden of showing the special circumstances that make his failure to comply 'substantially justified.'"); *see also Yeoman v. Ikea U.S. West, Inc.*, Case No. 11cv701 WQH (BGS), 2013 WL 12069024, at *3 (S.D. Cal. Feb. 27, 2013) ("The burden to show substantial justification or harmlessness lies with the party facing Rule 37(c) sanctions.") (citing Fed. R. Civ. P. 37(c) and *Yeti by Molly Ltd.*, 259 F.3d at 1107).

The Court has broad discretion in issuing sanctions under Rule 37. *Yeti by Molly*, 259 F.3d at 1106; *see also Margo G. v. Bloomfield*, Case No. 05CV2242 JM (AJB), 2008 WL 5431182, at *1 (S.D. Cal. April 23, 2008) (The Court has "wide latitude ... to issue sanctions under Rule 37(c)(1) for a party's failure to comply with the requirements set forth in Rule 26(a).").

---

Rule 26(g)(1)(A)-(B).  Certifications without substantial justification warrant sanctions. Rule 26(g)(3).  The Court cannot find Defendant violated these requirements or consider whether the violation was substantially justified, without Plaintiff even identifying what disclosure or discovery response was allegedly certified in violation of this Rule.

"Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, at *713 (9th Cir. April 13, 2010) (affirming district court decision under Rule 37(c)(1) allowing testimony at trial by an expert whose full report was not timely disclosed) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

## B.    Analysis

The Court will address the third and fourth factors and then consider the first and second factors regarding prejudice in analyzing Defendant's specific arguments for harmlessness and substantial justification.

As to the third factor, there was not and is not a date set for trial in this case.  In this respect, the untimely production and disclosure of some of these documents was not likely to disrupt the trial date.  The pretrial conference was approximately a month away and was continued on the court's own motion by the assigned district judge shortly after the parties' briefing on this dispute was filed.  (Doc. 17 (January 29, 2021 Pretrial Conference),[6] Doc. 41).  As discussed below, it does not appear Plaintiff is entitled to any additional discovery related to the Supplemental Production, but even if he were, it is likely that the parties could have sought leave from the Court to conduct it prior to the pretrial conference and certainly before trial. The likelihood of disrupting the trial was not great.  The Court also finds no bad faith or willfulness in not timely disclosing these documents.  As reflected in the Court's analysis below, Defendant did not intentionally

---

[6] The parties sought and were granted four more extensions of deadlines set in the Scheduling Order after this one, however none of those extensions sought continuance of the pretrial conference. (Docs. 15, 17-21, 24-25, and 28-29).

disclose these documents late.  Defendant simply did not, despite great effort and to some and less effort as to others, locate these documents sooner.

Defendant primarily categorizes its arguments as to harmlessness and substantial justification by category of document, although the first two categories are based on the documents having been previously produced and not being identified as trial exhibits. (Doc. 40 at 13-17).  Before analyzing the specific categories to determine whether Defendant has shown substantial justification or harmlessness the Court notes that most of Plaintiff's arguments as to prejudice are not specific.  Plaintiff has argued generally that he has been prejudiced by the late production of these and other documents because he will not be able to conduct additional discovery as to them.  For example, Plaintiff argues Defendant's late disclosure "totally foreclosed [Plaintiff] from conducting any discovery related [to the late production]" and "forecloses Plaintiff from examining any witnesses about the Belated Production." (Doc. 37-1 at 15-16).  However, other than generally asserting that Plaintiff will not be able to ascertain underlying information about these documents, there is little explanation what discovery Plaintiff has been denied or who he would need to examine and about what.  Additionally, as noted below, Plaintiff also does not address why the information that is provided by declaration regarding these documents in insufficient.

For the reasons detailed below, the Court finds Defendant has shown substantial justification or harmlessness as to the documents that were produced late.[7]

## 1.    Documents Already Produced

Defendant argues the Holiday Photograph, Door Photograph, and Photograph of TRC are the same as photographs, or video as to the Door, already produced by Plaintiff.

---

[7] Defendant's briefing addressed additional documents in this category.  The Court's analysis focuses primarily on the portions of the Supplemental Production the Court has found were responsive to Plaintiff's RFPs or supplements to initial disclosures. However, the Court has briefly addressed below whether Defendant has established substantial justification or harmlessness as to the others as well.  (*See* n.8 below).

(*Id.* at 14 (citing Baez Decl. ¶¶ 23, 28, 31)).  The Court found these were not responsive to Plaintiff's RFPs, but qualified as supplements to initial disclosures that should have been produced earlier.  (*See* I.B).

The only distinction is that the Door video is taken from the opposite direction in Plaintiff's previously produced version.  (*Id.* (citing Baez Decl. ¶ 31)).  Given Plaintiff already had these photographs there can be little to no prejudice from their identification now.  Defendant has established the late disclosure of these documents, previously produced or very similar to those previously produced, was harmless.  *Escobedo-Gonzalez*, Case No. 2:15-CV-1687 JCM (PAL), 2018 WL 4778031, *3 (D. Nev. Oct. 3, 2018) (Finding indisputably late disclosures that were substantially similar to documents previously produced were harmless under Rule 37).[8]

_____

[8] Defendant also argues other emails (Core Tester, Company Property, GWID 2016, GWID 2017) are harmless for the same reason—same or nearly same documents had previously been produced.  (*Id.* at 13-14) (citing Baez Decl. ¶¶ 23, 28, 41-43)).  Defendant explains that the Core Tester and Company Property emails had already been produced by Plaintiff in a different format, Excel.  (*Id.* at 13 (citing Baez Decl. ¶ 41)).  The only difference is that Defendant's version is in an email format rather than Excel.  (*Id.*)  Similarly, GWID 2016 and 2017 were also previously produced by Plaintiff.  (*Id.* at 13-14 (citing Baez Decl. ¶¶ 42-43)).  Defendant's vary only in that they include the cover emails.  (*Id.*)  As to GWID 2017, it is different from the version previously produced by Plaintiff in that it does not include the handwriting in the margins that Plaintiff's contained.  (*Id.* at 14 (citing Baez Decl. ¶ 43)).  Defendant also argues the Core Tester Email and Company Property Email, as well as Documents with Handwritten Notes, Task Spreadsheet, and Path to Design . . . ness, are harmless because the documents are not responsive to Plaintiff's RFPs and neither party has identified them as exhibits for trial.  (Doc. Id. at 14 (citing Chung Decl. ¶ 12)). As discussed above, the Court has already found these documents are not responsive to the RFPs Plaintiff has identified in his brief.  Additionally, it appears based on the Chung Declaration that neither party has identified them as exhibits for trial.  Based on the foregoing, even if the Court found they were untimely produced, the Court would find no prejudice or harm to Plaintiff in receiving these documents late.

### 2.    Slack Messages

Defendant argues the late production of the ten slack messages was substantially justified and not unfairly prejudicial to Plaintiff.  (Doc. 40 at 15).  Defendant conceded these messages are responsive to Plaintiff's RFPs.

As to substantial justification Defendant explains that Defendant spent thousands engaging Logikcull as a vendor to search more than 21,000 pages of Slack files, agreed on search terms with Plaintiff, ran the searches, and produced almost 3,000 pages of Slack messages.  (*Id.* (citing Baez Dec. ¶ 7)).  However, these ten Slack messages were missed because of a flaw in Logikcull's algorithm.  (*Id.* (citing Baez Decl. ¶¶ 12, 14).  Defendant explains in some detail how the deficiency was identified, raising it with the vendor, rerunning the agreed upon search terms after discovering the flaw, and producing the ten additional messages discovered.  (Baez Decl. ¶¶ 14-15).

Defendant also argues Plaintiff has not been unfairly prejudiced by the ten additional Slack messages because Defendant has only identified three of the messages as trial exhibits and they are all between Plaintiff, who can provide his own insight regarding them, and Matt Banes.  (Doc. 40 at 15).  As to the Slack messages, Plaintiff argues he "cannot question witnesses who are purported parties to the Slack conversations to understand context and relevance before trial."  (Doc. 37-1 at 16).  However, Defendant notes that it produced hundreds of pages of Slack messages between Plaintiff and Mr. Banes, but Plaintiff never took his deposition.  (Doc. 40 at 15).

The Court finds the late production of the Slack messages is harmless and substantially justified.  Based on the parties' arguments, the Court is not convinced these messages between Plaintiff and Mr. Banes are distinguishable in any important respect from those messages between Plaintiff and Mr. Banes that were already produced.  Additionally, having not elected to depose Mr. Banes about the Slack messages previously produced, the Court is left to wonder why a deposition would be necessary for these messages and not for those.  And, Plaintiff has not identified anything about these messages that would distinguish them from the other messages with Mr. Banes or

necessarily require further discovery regarding them. Collectively, this suggest little "prejudice or surprise" to Plaintiff. *Lanard Toys Ltd.*, 375 Fed. Appx. 705 at *713 (citing *David*, 324 F.3d at 857) (First factor among those courts may consider in determining whether a violation is justified or harmless is "prejudice or surprise to the party against whom the evidence is offered"). And, given this minimal or no prejudice, deposing Mr. Banes is not a necessary "cure." *Id.* (Second factor that may guide court's analysis is "the ability of that party to cure the prejudice"). It appears to the Court that no cure is required.

Neither party identifies authority in addressing particular categories of documents, but the Court has considered some of the cases Plaintiff relies on in general and finds them distinguishable. For example, *Yeti by Molly* is distinguishable. 259 F.3d at 1107. There, the only justification offered for the late disclosure of an expert report was the party's mistaken belief the report was being supplemented later. *Id.* In affirming the district court's exclusion of the damage's expert under an abuse of discretion standard, the Court relied on the availability of providing a preliminary version of the report and supplementing later or seeking an extension of the discovery deadline and the party doing neither. *Id.* at 1106-7. Here, these options were not available prior to the Supplemental Production because Defendant did not know about the additional ten messages. Defendant could not produce them on a preliminary basis or seek modification of the schedule to accommodate producing them prior to production because Defendant did not know about them until the flaw in the searches was identified.

The Court is also persuaded that the messages being missed was the result of a flaw with the vendor. This is not to say that parties are not responsible for their vendors mistakes, but taking into account all the steps that Defendant took to provide a complete production, that Defendant reran the searches once the flaw was identified, and that Defendant promptly produced the newly found messages, the Court finds Defendant has shown substantial justification.

### 3.     YouTube Watch History

Defendant argues its late production of Plaintiff's YouTube Watch History from his work computer is substantially justified and harmless.  As discussed above, the Court found the Watch History was not responsive to the RFPs identified by Plaintiff, but qualify as supplements to initial disclosures. (*See* I.B)

Defendant argues the YouTube Watch History was not discovered because Plaintiff attempted to wipe or clear all data from his work computer.  (Doc. 40 at 10, 15-16.)  The Baez Declaration explains that in April 2019, Defendant preserved the Google Suite account associated with Plaintiff's work email using a feature called Takeout. (Baez Decl. ¶ 16).  The feature allows a user to export Google Suite data into a downloadable file.  (*Id.*)  When Mr. Baez searched the account in mid-2019, including bookmarks and internet history, he found "several" of the twenty electronic folders were empty.  (*Id.* ¶ 17).  Mr. Baez did not find the YouTube Watch History and Defendant later learned from Plaintiff's Slack messages that Plaintiff had attempted to delete all data from his work computer.  (*Id.*)  The Watch History was only located in December 2020 when Baez went back and reviewed the Google Takeout file again and discovered the file labeled YouTube was not empty; it contained the YouTube Watch History at issue here. (*Id.* ¶ 18).

Defendant asserts that it did not check all the files because it made "the reasonable assumption that, like the first several folders . . . Plaintiff had successfully deleted the rest of the data."  (*Id.* ¶ 19).  The Court is not persuaded this is substantial justification.  Mr. Baez only needed to open less than 20 electronic folders to see if they contained anything.  Instead, he assumed they were empty because "several" were empty without checking.[9]  It is also not clear how Slack messages reviewed later that indicated Plaintiff had in fact attempted to wipe his computer impacted the initial assumption that the files

---

[9] The Court recognizes he was ultimately almost correct.  All the folders were empty except the YouTube Watch History.

were empty.  At best, these messages supported not looking again sooner, but they do not justify the initial incomplete search.

The Court is more persuaded that the YouTube Watch History's late identification is not prejudicial or is minimally prejudicial to Plaintiff.  As Defendant notes and the Court found above, the YouTube Watch History is not responsive to any of the RFPs identified by Plaintiff. (Doc. 40 at 15-16).   Additionally, as Defendant points out, Plaintiff himself is in the best position to evaluate his own Watch History addressing whether he did or did not watch the videos on it.  (*Id.* at 16).  It is not clear what other discovery Plaintiff would have sought had Defendant identified this as a supplement to initial disclosures earlier.  Plaintiff argues he "has no ability to ascertain how the purported YouTube 'viewing history' was generated, by whom, on which device, and/or who has custody of that device at all relevant times," but offers no explanation of the Watch History or why this information would be needed to address Defendant's use of it. Based on the information provided about the Watch History and how it was located and produced, the Court find the prejudice of its late disclosure is minimal, if any.  *Lanard Toys Ltd.*, 375 Fed. Appx. 705 at *713 (citing *David*, 324 F.3d at 857) (First factor – prejudice or surprise). As to the only issues Plaintiff identifies as needed discovery, the origins of the files, it is not clear why more information than that provided in the Baez Declaration is needed.  *Lanard Toys Ltd.*, 375 Fed. Appx. 705 at *713 (citing *David*, 324 F.3d at 857) (Second factor – ability to cure prejudice). While the Court disagrees with Defendant's rationale for not searching all twenty folders initially, the Baez Declaration details how the account was preserved, how and when it was searched, what was found, when it was found, and when it was produced. (Baez Decl. ¶¶ 16-19). The Court finds the late disclosure of the YouTube Watch History harmless.

### 4.   Emails from Fernandes to Baez

Defendant argues the late production of the two emails from Fernandes to Baez, discussed above, is both substantially justified and harmless.  The Court found these

emails were not responsive to the RFPs identified by Plaintiff, but would qualify as supplements to initial disclosures.  (*See* I.B)

As to substantial justification, Defendant asserts that the documents were not discovered during Defendant's prior email search because only a small portion mentions Plaintiff and neither is responsive to Plaintiff's RFPs.  (Doc. 40 at 16).  Mr. Baez's explains in his declaration that he previously searched through the sent and received email of himself, Mr. Fernandes, Plaintiff, and other workers and believed they had located all relevant email correspondence.  (Baez Decl. ¶ 36).  However, on December 15, 2020, when reviewing documents in Logikcull in preparation for trial, he discovered the two emails at issue.  (*Id.* ¶ 38).  Mr. Baez goes on to explain that they were not discovered in earlier searches because there is no reference to the alleged harasser, William Stamper, only a small portion of each email mentions Plaintiff, and they do not fit within the categories of Plaintiff's RFPs.  (*Id.*)

As the Court determined above, these emails are not responsive to any RFPs identified by Plaintiff.  However, the Court is not persuaded that simply saying we looked before missed them is substantial justification.  Unlike the issue encountered with the ten newly found Slack messages, here there is no indication why they were ultimately located, *i.e.,* a flaw in the technology being used was identified and overcome.  Here, Defendant explains why they were not initially found, minimal or no reference to the things he was searching for, but there is no explanation why they were found later.  (Doc. 40 at 16 ("Mr. Baez came across these emails in Logikcull recently when preparing for trial")). Defendant has not shown substantial justification.

As to harmlessness, Defendant argues "Plaintiff will suffer no harm due to the timing because he has personal knowledge of his work hours, and Plaintiff already deposed Defendant on his impressions of Plaintiff as a worker."  (Doc. 40 at 16). Plaintiff points out that he "cannot examine Mr. Fernandes or Mr. Baez in connection with the belated emails (to which they were party), more than a year after Mr. Fernandes and Mr. Baez were deposed. Plaintiff must critique and challenge exhibits he has never

had a fair opportunity to scrutinize, and must construct a response to testimony and evidence he was never on notice of." (Doc. 37-1 at 17).

Unlike the Slack messages where there was no indication that a deposition would be necessary given the same person had not been deposed about other Slack messages, here Plaintiff did depose both of these individuals.  However, the Court is not convinced Plaintiff would need to depose Mr. Baez or Mr. Fernandes about these two emails.  The Court has reviewed them and it is not readily apparent why further deposition would be necessary.  In this respect, the Court agrees with Defendant that references to Plaintiff's work hours would not require a deposition and Mr. Baez's impressions have already been addressed.  These emails are no more than minimally prejudicial and no cure is required. *Lanard Toys Ltd.*, 375 Fed. Appx. 705 at *713 (citing *David*, 324 F.3d at 857). The Court finds Defendant has established harmlessness as to these emails.

### 5.    Misc. Photographs

Defendant argues the late production of the Misc. Photographs is harmless and substantially justified.  The Court found these photos were not responsive to Plaintiff's RFPs, but qualified as supplements to initial disclosures.  (*See* I.B)

Defendant argues the Misc. Photographs are harmless because they are not responsive to Plaintiff's RFPs and the substance of the photographs is not a surprise (picture of office area and picture of Plaintiff).  (Doc. 40 at 16 (citing Baez Decl. ¶ 25)).  As to substantial justification for the late production, Defendant explains that these photographs were only recently discovered because they were misfiled in a folder on Defendant's server labeled "marketing." (*Id.* (citing Baez Decl. ¶ 24).  Because Plaintiff was not involved in marketing, Defendant had not searched the marketing folder for matters pertaining to Plaintiff.  (Baez Decl. ¶¶ 21, 24).  As to photographs in general, Plaintiff argues "[h]e has no ability to determine the source and origin of the photographs." (Doc 37-1 at 17).  However, Plaintiff does not address these specific photographs.  The Court finds no prejudice in the late identification of these photographs that are not responsive to Plaintiff's RFPs.  They consist of a photograph of Plaintiff's

office and him.  The Court will require Mr. Baez or other appropriate source to provide Plaintiff with a declaration addressing the source of the photographs, including at least when they were taken and by whom.

### 6.    One on One Notes

Defendant describes this document as "relat[ing] solely to the impressions of Mr. Fernandes and Mr. Baez regarding Plaintiff."  Defendant argues it is not responsive to Plaintiff's RFP 23 because it was not in Plaintiff's personnel file and that it is harmless because Plaintiff has already deposed Defendant on its impressions of him as a worker.

The Court found this document was not responsive to Plaintiff's RFP 23, but would qualify as a supplement to initial disclosures because Defendant plans to rely on it at trial.  While Defendant does not explain why it was not identified sooner, Plaintiff has not addressed it at all.  In the few paragraphs of Plaintiff's motion that address the categories of documents, there is not even a vague reference to this document.  Based on the only representation of it, Defendant's description of it as "One on One Excel Spreadsheet Notes 9/26/17" (Doc. 40 at 7) that relates solely to impressions of Mr. Baez and Mr. Fernandes regarding Plaintiff" and Defendant's representation that Defendant has already provided deposition testimony as to impressions of Plaintiff, the Court finds Defendant has established harmlessness.

### 7.    Magazine Photographs

Defendant argues its production of these photographs was timely because Defendant only received them from a third party on December 23, 2020.  (Doc. 40 at 17).  Defendant represents that they were produced to Plaintiff the same day Defendant received them.  Defendant also notes that the images should be familiar to Plaintiff because they depict what he described in his deposition.  (*Id.* (citing Chung Decl. ¶ 15); Ex. P (excerpt of deposition testimony regarding magazines on exposed pipes in the ceiling).  As noted above, Plaintiff only addressed photographs in general, arguing Plaintiff "has no ability to determine the source and origin of the photographs."  (Doc 37-1 at 17).  However, the Chung Declaration indicates that the Magazine Photographs were

taken on March 12, 2019 at The Behemoth's State Street office by Dr. Michelle Taylor, a third-party professional.  (Chung Decl. ¶ 8).  Given Defendant produced them the same day it received them and has identified the source of them , the Court is persuaded that Defendant has shown substantial justification and harmlessness.  *See Hypertherm, Inc.*, 2009 WL 703271, at *1 ("A supplemental disclosure under Rule 26(e)(1)(A) is timely if it is made as soon as possible.").

## III.   CONCLUSION

Plaintiff's Motion for Sanctions is **DENIED**.

Dated:  May 27, 2021

Hon. Bernard G. Skomal
United States Magistrate Judge